**GRANGE MUTUAL CASUALTY COMPANY, Complainant-Appellant,**

v.

**Mary Lou BOSWELL et al., Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section.

June 30, 1972.

Certiorari Denied by Supreme Court Jan. 15, 1973.

**136**

Maddux, Moore & Jones, Cookeville, for complainant-appellant.

Roberts & Turnbull, Livingston, Cameron, Oakley & Jared, Cookeville, for defendants-appellees, Mary Lou and Ward Boswell.

Officer & Officer, Livingston, for defendants-appellees, Ross and Pearl Cantrell.

## OPINION

SHRIVER, Presiding Judge.

The complainant, Grange Mutual Casualty Company, filed a bill in the Chancery Court of Overton County, Tennessee, seeking a declaratory judgment as to the rights and liabilities of the parties with respect to coverage under a policy of insurance issued to defendant, Ross Cantrell, covering a motor vehicle described in the policy as a 1969 Ford Van equipped to carry twelve passengers.

The case was tried before Chancellor Scott Camp on oral and documentary evidence, without the intervention of a jury, and resulted in a decree to the effect that complainant Insurance Company by its Policy No. 3204732 afforded coverage at the time of the accident of November 13, 1969 to the defendants, Ross and Pearl Cantrell.

From this decree the complainant prayed and perfected an appeal to this Court and has assigned errors.

## ASSIGNMENT OF ERRORS

There are three assignments of errors, as follows:

"I. The Trial Court erred in holding that the twelve passenger Cantrell vehicle was not being used 'for a business or commercial purpose' at the time of the accident and that the policy of insurance applied to claims arising from the accident.

II. The Trial Court erred in finding that the Cantrell 'bus route' was not operated at a 'profit' because the evidence clearly established that Mrs. Cantrell received compensation substantially exceeding her direct operating costs.

III. The Trial Court erred in admitting parol evidence to construe the unambiguous 'business or commercial purpose' exclusion and assuming arguendo that parol evidence was admissible; the Trial Court erred in finding that the plaintiff's selling agent authorized carrying passengers for hire."

## THE FACTS

It is shown by the record that the appellee, Pearl Cantrell, drove a 1959 Ford Van automobile insured by the appellant, Grange Mutual Casualty Company, which vehicle was equipped to carry twelve passengers. Appellees admit that the van, or small bus, was a "utility vehicle" rather than a "farm vehicle" or a "standard passenger automobile", within the definitions of the policy.

On November 13, 1969, Mrs. Pearl Cantrell was driving her 1969 twelve passenger Ford Van, accompanied by her co-appellee, Mary Lou Boswell, and five other fellow factory workers, returning from work, when they were involved in an accident with an uninsured motorist, one James Crabtree. Thereafter, the appellees, Pearl Cantrell and Mary Lou Boswell, asserted claims against the Insurance Company under the uninsured motorist section of the policy, which claim, after considerable investigation by representatives of the Insurance Company and a delay of many months, was denied.

In its bill seeking a declaratory judgment the complainant asserted that it had no liability under the policy in question because the vehicle was being used for a business or commercial purpose at the time of the accident.

It is shown that Mrs. Cantrell was employed at a factory in Livingston, Tennessee, where a number of her neighbors also worked, and that it was her practice to haul a number of her co-workers to and from work in the Ford Van described in the insurance policy of the complainant. Mrs. Cantrell testified that she averaged hauling six or seven passengers to and from work each day and that each passenger contributed sixty cents a day to help defray her expenses of driving to and from work. She testified that she averaged "at least $50.00 to $60.00 each month" as contributions from her passengers and, although she claimed that these were merely voluntary contributions, she testified that since she had to go to and from work herself, it helped her a great deal financially to have these passengers who each contributed sixty cents a day.

While there is some question as to how much profit accrued to Mrs. Cantrell from hauling these passengers, she stated that her gasoline bill was about $1.00 a day and she did not undertake to estimate any additional expense of operation of the car.

It was shown that on some days when she left work early or did not go to work, she would make an extra trip to and from the factory for the sole purpose of providing transportation for these paying passengers.

While a question is made as to whether Mrs. Cantrell and her husband knew there was some doubt about her insurance coverage when she was hauling passengers, it seems significant that she testified as follows:

"Q. Now, did you tell the people that you couldn't actually charge them anything?

A. Yes, I told them I wasn't allowed to charge.

Q. How did you know about that?

A. Well, our insurance had done told us that we wasn't allowed to drive and haul passengers and charge for it."

It is the insistence of counsel for the Insurance Company that coverage of the Cantrell automobile was not afforded by the policy in question because of the provisions of the policy designated as "PART I —LIABILITY", which reads as follows:

"PART I—LIABILITY

" . . . To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages . . . . arising out of the ownership, maintenance or use of the owned automobile . . .

. . . . . .

'Owned automobile' means

(a) a private passenger farm or utility automobile described in this policy

. . . .

. . . . . .

'utility automobile' means an automobile, other than a farm automobile, with a load capacity of fifteen hundred pounds

or less of the pick-up body, sedan delivery or panel truck type not used for business or commercial purposes;

. . . .

. . . . . .

*Exclusions:* This policy does not apply under Part I:

(a) To any automobile while used as a public or livery conveyance . . . ."

We are in agreement with counsel for complainant that the provisions of the policy under "PART I—LIABILITY" does not include coverage of a sedan, delivery or panel truck type which is being used for business or commercial purposes.

■ We are of opinion that the facts with regard to the hauling of passengers in the vehicle described in the policy and the payments made to Mrs. Cantrell by the passengers brings its use within the terms "used for business or commercial purposes," hence, outside the coverage afforded under said PART I—LIABILITY provisions of the policy.

■ On the other hand, we agree with counsel for the appellees that the policy contains other pertinent provisions, not mentioned in appellant's brief, which provisions are found under "PART IV—PROTECTION AGAINST UNINSURED MOTORISTS".

Under this section, we find the following:

"*Coverage E—Uninsured Motorists (Damages for Bodily Injury):* To pay all sums which the insured or his legal representatives shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; . . .

. . . . . .

*Definitions:* The definitions, under Part I, except the definition of 'insured', apply to Part IV and under Part IV: *'insured'* means:

(a) The named insured and any relative;

(b) any other person while occupying an insured automobile and

(c) any person with respect to damages he is entitled to recover because of bodily injury to which this Part applies sustained by an insured under (a) or (b) above.

The insurance afforded under Part IV applies separately to each insured, but the inclusion herein of more than one insured shall not operate to increase the units of the company's liability.

*'insured automobile'* means:

(a) an automobile described in the policy for which a specific premium charge indicates that coverage is afforded.

. . . . . .

but shall

not include . . . .

(2) Any automobile while used as a public or livery conveyance."

As is urged by counsel for the appellees, it is readily seen from the foregoing that a different exclusion and/or definition of an "insured vehicle" applies in the case of an uninsured motorist claim as opposed to a general liability claim under Part I of the policy and that in Part IV providing protection against uninsured motorists there is no exclusion of a vehicle where paying passengers are transported or passengers hauled for a consideration.

Thus, while we do not agree with the Chancellor's conclusion that the vehicle in question was not being used for a business or commercial purpose at the time of the accident out of which this suit arose, nevertheless, we think he reached the right result as to liability under the policy in view

of the "uninsured motorist" provisions contained in "PART IV" above quoted.

From the foregoing it follows that the judgment of the Chancellor is affirmed.

Affirmed.

PURYEAR and TODD, JJ., concur.